# 13-4825-cv

IN THE

# United States Court of Appeals

FOR THE SECOND CIRCUIT



CITIGROUP, INC.,

*Plaintiff-Appellant,*

*v.*

ABU DHABI INVESTMENT AUTHORITY,

*Defendant-Appellee.*

———————————

*On Appeal from the United States District Court*
*for the Southern District of New York (New York City)*

## BRIEF FOR DEFENDANT-APPELLEE
## ABU DHABI INVESTMENT AUTHORITY
## (REDACTED)

Peter E. Calamari
Sanford I. Weisburst
Tai-Heng Cheng
QUINN EMANUEL URQUHART & SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, New York 10010
212-849-7000

*Attorneys for Defendant-Appellee*
*Abu Dhabi Investment Authority*

## <u>CORPORATE DISCLOSURE STATEMENT</u>

Pursuant to FRAP 26.1, Defendant-Appellee Abu Dhabi Investment Authority ("ADIA") states that it has no parent company and that no publicly traded company owns 10% or more of ADIA.

# TABLE OF CONTENTS

Page

CORPORATE DISCLOSURE STATEMENT ........................................................2

INTRODUCTION ............................................................................................1

COUNTERSTATEMENT OF ISSUE PRESENTED................................................5

COUNTERSTATEMENT OF THE CASE...........................................................5

    A.    Factual Background..............................................................5

    B.    The First Arbitration............................................................6

    C.    The Second Arbitration .......................................................9

    D.    The District Court's Decision Dismissing Citigroup's
           Complaint Requesting An Injunction Against The Second
           Arbitration ......................................................................10

SUMMARY OF ARGUMENT ........................................................................13

STANDARD OF REVIEW .............................................................................14

ARGUMENT ..............................................................................................15

THE DISTRICT COURT ACTED WITHIN ITS DISCRETION IN
        DECLINING TO ENJOIN THE SECOND ARBITRATION AND
        THEREFORE IN DISMISSING CITIGROUP'S COMPLAINT ...............15

    A.    The Remedial Authority Provided By The All Writs Act Must
           Be Exercised Against The Backdrop Of The Substantive Law .........16

    B.    The Substantive Law Of Arbitration Assigns To The
           Arbitrators, Not The Federal District Court, The Task Of
           Deciding A Preclusion Defense Predicated On A Prior Federal
           Judgment ........................................................................17

    C.    The District Court Acted Within Its Discretion In Finding That
           No Exceptional Circumstances Warrant An All Writs Act
           Injunction.......................................................................24

D.      Citigroup's Remaining Policy Argument Is Incorrect And Does Not Establish That The District Court Abused Its Discretion In Declining To Enjoin The Second Arbitration ......................................29

CONCLUSION ................................................................................................33

# <u>TABLE OF AUTHORITIES</u>

<u>**Page**</u>

## <u>Cases</u>

*AT&T Techs., Inc. v. Commc'ns Workers of Am.*,
  475 U.S. 643 (1986)............................................................30

*Abu Dhabi Inv. Auth. v. Citigroup, Inc.*,
  No. 13-1068-cv, 2014 WL 628354 (2d Cir. Feb. 19, 2014)............................4, 8

*Alliance Bernstein Inv. Research & Mgmt., Inc. v. Schaffran*,
  445 F.3d 121 (2d Cir. 2006) ...............................................17

*Allstate Ins. Co. v. Elzanaty*,
  929 F. Supp. 2d 199 (E.D.N.Y. 2013) .......................................12, 28

*In re American Express Financial Advisors Securities Litigation*,
  672 F.3d 113 (2d Cir. 2011) ...............................2, 12, 24, 25, 26, 28

*Arciniaga v. Gen. Motors Corp.*,
  460 F.3d 231 (2d Cir. 2006) ...............................................18

*Bailey v. State Farm Fire & Cas. Co.*,
  414 F.3d 1187 (10th Cir. 2005) ............................................14

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.*,
  207 F.3d 1126 (9th Cir. 2000) .............................................22, 23, 27

*Diapulse Corp. of Am. v. Carba, Ltd.*,
  626 F.2d 1108 (2d Cir. 1980) ..............................................22

*Emp'rs Ins. Co. of Wausau v. OneBeacon Am. Ins. Co.*,
  744 F.3d 25 (1st Cir. 2014)................................................22, 27

*Evangelista v. United States*,
  523 F. App'x 12 (2d Cir. 2013) ............................................14

*Gay v. CreditInform*,
  511 F.3d 369 (3d Cir. 2007) ...............................................30

*Hartford Accident & Indem. Co. v. Swiss Reins. Am. Corp.*,
  246 F.3d 219 (2d Cir. 2001) ...............................................11, 18

*Hartley v. Stamford Towers Ltd. Partnership*,
  Nos. 92-16802 & 92-56528, 1994 WL 463497 (9th Cir. Aug. 26, 1994)..........28

*Howsam v. Dean Witter Reynolds, Inc.*,
  537 U.S. 79 (2002)...................................... 18, 19, 22, 23, 26, 27

*Kelly v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
  985 F.2d 1067 (11th Cir. 1993) ............................................17, 23, 26

iv

*Klay v. United Healthgroup, Inc.*,
  376 F.3d 1092 (11th Cir. 2004) ......................................................17, 22, 23, 28

*Local 1814, Int'l Longshoremen's Ass'n, AFL-CIO v. N.Y. Shipping Ass'n, Inc.*,
  965 F.2d 1224 (2d Cir. 1992) ...............................................................12, 27, 30

*MLE Realty Assocs. v. Handler*,
  192 F.3d 259 (2d Cir. 1999) .............................................................................22

*Merrill Lynch & Co. v. Allegheny Energy, Inc.*,
  500 F.3d 171 (2d Cir. 2007) .............................................................................25

*Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*,
  460 U.S. 1 (1983).........................................................................................1, 19

*Motorola Credit Corp. v. Uzan*,
  388 F.3d 39 (2d Cir. 2004) ...............................................................................18

*Nat'l Union Fire Ins. Co. v. Belco Petroleum Corp.*,
  88 F.3d 129 (2d Cir. 1996) ........................................................................passim

*Nevada v. United States*,
  463 U.S. 110 (1983).........................................................................................18

*Penn. Bureau of Corr. v. U.S. Marshals Serv.*,
  474 U.S. 34 (1985)...........................................................................................12

*Proctor v. LeClaire*,
  715 F.3d 402 (2d Cir. 2013) ..........................................................3, 4, 31, 32

*Ragone v. Atl. Video at Manhattan Ctr.*,
  595 F.3d 115 (2d Cir. 2010) ...............................................................10, 17, 18

*Republic of Ecuador v. Chevron Corp.*,
  638 F.3d 384 (2d Cir. 2011) .............................................................................18

*SEC v. First Jersey Sec., Inc.*,
  101 F.3d 1450 (2d Cir. 1996) .........................................................4, 31, 32

*Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*,
  559 U.S. 662 (2010)............................................................................................8

*U.S. Fire Ins. Co. v. Nat'l Gypsum Co.*,
  101 F.3d 813 (2d Cir. 1996) ......................................................................passim

*Union of Needletrades, Indus. & Textile Emps., AFL-CIO, CLC v. U.S. I.N.S.*,
  336 F.3d 200 (2d Cir. 2003) .............................................................................25

*United States v. Eberhard*,
  No. 03 CR 562, 2004 WL 616122 (S.D.N.Y. Mar. 30, 2004) .........................29

*United States v. George*,
  676 F.3d 249 (1st Cir. 2012)............................................................................16

*United States v. Schurkman*,
 728 F.3d 129 (2d Cir. 2013) ........................................................14, 16

*WNET, Thirteen v. Aereo, Inc.*,
 712 F.3d 676 (2d Cir. 2013) ...................................................24, 25

*In re Y & A Grp. Sec. Litig.*,
 38 F.3d 380 (8th Cir. 1994) ...................................................23, 28

## Statutes

9 U.S.C. § 1 ....................................................................................17

9 U.S.C. § 13 ..................................................................................22

28 U.S.C. § 1651(a) ...................................................1, 12, 13, 16, 27

28 U.S.C. § 2283 ............................................................................16

## Other Authorities

*Fed stress test rejected Citi's $8 billion buyback plan*:  WSJ, REUTERS, Apr. 20,
 2012, http://www.reuters.com/article/2012/04/21/us-fed-stress-test-rejected-
 citis-8-bln-idUSBRE83K03E20120421 ...........................................9

# INTRODUCTION

District courts have authority under the All Writs Act to issue "all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a). Substantive law informs whether a writ is "necessary or appropriate" or "agreeable to the usages and principles of law" in a given case. And in the situation here—a party's invocation of a res judicata defense, based on a prior federal judgment, as to a new arbitration proceeding—this Court has squarely held, as a matter of the substantive law of arbitration, that the arbitrators, not the federal district court, must resolve the res judicata defense. *U.S. Fire Ins. Co. v. Nat'l Gypsum Co.*, 101 F.3d 813, 817 (2d Cir. 1996) (citing *Nat'l Union Fire Ins. Co. v. Belco Petroleum Corp.*, 88 F.3d 129, 135 (2d Cir. 1996)). This Court relied on "the FAA's strong presumption of arbitrability," *U.S. Fire*, 101 F.3d at 816; *see also Belco*, 88 F.3d at 133, under which "'any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability,'" *U.S. Fire*, 101 F.3d at 816 (quoting *Moses H. Cone Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983)).

That *U.S. Fire* and *Belco* addressed only the substantive "who decides res judicata" question, and not the remedial All Writs Act question, does not mean that

those decisions are not controlling here, since it would make no sense to hold that arbitrators must decide the question but then to allow a court to enjoin them from deciding it. And applying *U.S. Fire* and *Belco* here does not entail according any lesser status to a federal judgment confirming an arbitration award (the situation here) than to a federal judgment in a case that was litigated start-to-finish in federal court (the situation in *U.S. Fire*); *U.S. Fire* already held in the latter situation that the preclusion issue is for the arbitrators to decide, and the district court reached the same conclusion here.

To be sure, *dicta* in *In re American Express Financial Advisors Securities Litigation*, 672 F.3d 113, 141 n.20 (2d Cir. 2011), without discussing *U.S. Fire* or *Belco*, suggests that in some circumstances it "might" be appropriate for a district court to use its All Writs Act authority to enjoin an arbitration proceeding. Contrary to Plaintiff-Appellant Citigroup Inc.'s description (Br. 29), apparently made to seek the benefit of *de novo* appellate review of a supposed legal error, the district court here did not deem itself "powerless" under the All Writs Act. Instead, the district court acknowledged the *American Express dicta* and then exercised its discretion to find that circumstances warranting an injunction against arbitration are absent here because, *inter alia*, there is no threat of "multiple inconsistent judgments" in multiple *ongoing* proceedings. SA9. Absent such circumstances, the district court held, this case is within the "garden-variety"

situation addressed by *U.S. Fire* and *Belco* where a *concluded* federal judgment (and/or arbitration award) is invoked as res judicata with respect to a new arbitration between parties to that prior judgment (and/or award). SA10. The court did not abuse its discretion in so finding, and thus in dismissing Citigroup's complaint seeking an injunction against the arbitration commenced by Defendant-Appellee Abu Dhabi Investment Authority ("ADIA").

Lacking any convincing response to these points, Citigroup attempts to distract from them by asserting (Br. 4) that the Second Arbitration[1] must be enjoined because res judicata is a foregone conclusion. It is not. "The fact that several operative facts may be common to successive actions between the same parties does not mean that a judgment in the first will always preclude litigation of the second." *Proctor v. LeClaire*, 715 F.3d 402, 412 (2d Cir. 2013) (collecting cases). ADIA has strong arguments that, whereas the First Arbitration focused on Citigroup's inducement of ADIA to make a $7.5 billion investment in Citigroup, and on two instances of Citigroup's post-investment conduct in February and May 2009, the Second Arbitration concerns distinct Citigroup conduct. Citigroup may believe it has arguments the other way, but those arguments must be presented to the arbitrators, not the district court, for decision.

---

[1] ADIA employs the same "First Arbitration" and "Second Arbitration" terminology as Citigroup employs in its brief.

3

Likewise, Citigroup's assertion (Br. 3) that ADIA engaged in "frivolous" conduct by unsuccessfully moving in federal court to vacate the award in the parties' First Arbitration (and then appealing the denial of that motion to this Court) provides no basis to find that the district court abused its discretion in declining to enjoin the Second Arbitration.[2] The issue on that earlier appeal is entirely unrelated to the issue on this appeal. Whereas the earlier appeal concerned whether the first arbitration panel manifestly disregarded the law or exceeded its powers in selecting New York law to govern the tort claims in the First Arbitration, *see Abu Dhabi Inv. Auth. v. Citigroup, Inc.*, No. 13-1068-cv, --- F. App'x ---, 2014 WL 628354, at *1 (2d Cir. Feb. 19, 2014) (summary order), this appeal concerns whether the arbitrators or the district court should decide the res judicata question. To the extent ADIA's earlier motion and appeal somehow bear on the res judicata question whether the Second Arbitration "'involve[s] *different* transactions'" from the First Arbitration, *Proctor*, 715 F.3d at 412 (alteration in original) (quoting *SEC v. First Jersey Sec., Inc.*, 101 F.3d 1450, 1464 (2d Cir. 1996)), Citigroup is again required to make this argument to the arbitrators rather than the district court.

---

[2] As an initial matter, this Court never found that ADIA acted frivolously in the earlier appeal; although one member of the panel so suggested at oral argument, the other two panel members did not endorse the suggestion, and it is absent from this Court's summary order.

4

The district court's judgment dismissing Citigroup's complaint to enjoin the Second Arbitration should be affirmed.

<u>**COUNTERSTATEMENT OF ISSUE PRESENTED**</u>

Whether the district court acted within its broad discretion under the All Writs Act in declining to enjoin the Second Arbitration, where the substantive law of arbitration directs that a res judicata defense to the Second Arbitration should be resolved by the arbitrators rather than a court, and where no ongoing proceedings are threatened by the Second Arbitration.

<u>**COUNTERSTATEMENT OF THE CASE**</u>

**A. Factual Background**

ADIA is a sovereign wealth fund that was established by the government of Abu Dhabi in 1976 and continues to be wholly owned by the government. ADIA's offices are located in Abu Dhabi. A268.

By November 2007, the U.S. economy was in a credit crisis. A35. Citigroup, a major U.S. bank that had substantial exposure to subprime mortgage-based assets (among other financial problems), actively sought a large injection of capital. *Id.* Citigroup approached ADIA later that month seeking a substantial investment to shore up Citigroup's financial condition. A286. Soon thereafter, ADIA agreed to invest $7.5 billion, *id.*, and the parties signed an "Investment Agreement," A131.

Under the Investment Agreement, ADIA provided Citigroup with $7.5 billion in exchange for convertible securities called "Upper DECS certificates." A36; *see also* A131. The Agreement, together with other ancillary agreements, provided that a quarter of ADIA's Upper DECS certificates converted to Citigroup common stock at the contractually set price of $31.83 per share on March and September 15 of 2010 and 2011, such that by September 15, 2011, ADIA would hold only Citigroup common stock. A276-77. The Agreement contained an arbitration clause, Section 5.6(a), providing that "any dispute that arises out of or relates to the Transaction Documents, or the breach thereof, … will be decided through arbitration administered by the American Arbitration Association …." A163.

### B. The First Arbitration



ADIA felt aggrieved not only by this *pre*-investment conduct by Citigroup, but also by Citigroup's preferential treatment of investors who made their investments

in Citigroup after ADIA did. A300. This *post*-investment conduct specifically concerned actions by Citigroup in February 2009, when it offered to all holders of preferred securities besides ADIA the opportunity to convert their securities into Citigroup common stock at a conversion rate of $3.25, and in May 2009, when Citigroup offered investors in a different class of securities known as "trust preferred securities" the opportunity to convert those securities into Citigroup common stock at a similar conversion rate. A298-99.

In December 2009, ADIA filed a notice of arbitration and a statement of claim, which commenced the First Arbitration. The statement of claim summarized the above-described events and asserted that Citigroup's pre-investment conduct constituted fraud, negligent misrepresentation, breach of fiduciary duty, and breach of contract, and that Citigroup's post-investment conduct constituted a breach of the implied covenant of good faith and fair dealing. A299-300.

On December 1, 2010, the tribunal issued a decision that New York law rather than Abu Dhabi law applied to ADIA's tort claims of negligent misrepresentation and fraud; the choice of law stood to be pivotal because Abu Dhabi law, unlike New York law, focuses solely on whether the defendant acted unreasonably and does not require that the plaintiff show that the defendant acted with knowledge of falsity, that the parties were in a special relationship, or that the

plaintiff was sufficiently "unsophisticated" that it could justifiably rely on the defendant's representations. ███████████████████████████████

███████████████████████████████

On March 11, 2011, the tribunal granted summary judgment to Citigroup rejecting ADIA's claim for breach of implied covenant of good faith and fair dealing, reasoning that this claim conflicted with provisions of the Investment Agreement. A261. On October 14, 2011, the tribunal issued an award rejecting the rest of ADIA's claims. A28.

Subsequently, ADIA petitioned the United States District Court for the Southern District of New York to vacate the award under the Federal Arbitration Act, arguing, *inter alia*, that the tribunal had exceeded its powers by deciding to apply New York (rather than Abu Dhabi) law to ADIA's tort claims based on a choice-of-law framework drawn principally from arbitration treatises rather than from the choice-of-law frameworks of New York or other jurisdictions. The district court denied ADIA's petition, ADIA appealed, and this Court affirmed by summary order. *Abu Dhabi Inv. Auth. v. Citigroup, Inc.*, No. 13-1068-cv, --- F. App'x ---, 2014 WL 628354 (2d Cir. Feb. 19, 2014) (summary order).[3]

---

[3] On June 17, 2014, ADIA filed a petition for a writ of certiorari presenting the question whether the summary order is inconsistent with *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662 (2010). That petition is pending.

### C. The Second Arbitration

The Second Arbitration concerns distinct Citigroup conduct that ADIA considered to be in violation of the Investment Agreement's provision, Section 3.1(a), requiring, subject to the terms and conditions of the Agreement, that the parties use commercially reasonable efforts in good faith during the life of the Agreement. A150. For example, in 2012, unlike other banks, Citigroup failed to pass the Federal Reserve's Comprehensive Capital Adequacy Review. Citigroup's failure prevented it from executing its plan to buy back $8-10 billion in shares, which would have increased Citigroup's stockprice to ADIA's benefit as a shareholder. Instead, once Citigroup failed the review, its stock price fell 3.2 percent, the biggest drop on the 24-company KBW Bank Index, which damaged ADIA's investment in Citigroup. In comparison, the stock prices of many of the 15 out of the 19 banks that passed that review increased. *See, e.g.*, *Fed stress test rejected Citi's $8 billion buyback plan: WSJ*, REUTERS, Apr. 20, 2012, *available at* http://www.reuters.com/article/2012/04/21/us-fed-stress-test-rejected-citis-8-bln-idUSBRE83K03E20120421.

On August 16, 2013, ADIA commenced the Second Arbitration against Citigroup regarding this and other events, which had not been addressed by ADIA's statement of claim in the First Arbitration. *See* A271, A273-74. The

statement of claim in the Second Arbitration alleges claims for breach of contract and breach of the implied covenant of good faith and fair dealing. A274-79.

Shortly after ADIA filed its notice of arbitration commencing the Second Arbitration, Citigroup filed its complaint in the district court, asserting a single cause of action requesting the court to enjoin the Second Arbitration. A21-23. Citigroup accompanied its complaint with a motion for preliminary injunction of the Second Arbitration. A25. ADIA moved to dismiss the complaint and filed an opposition to Citigroup's motion for a preliminary injunction. *See* A4, A6. █████

██████████████████████████████████████████████████████
██████████████████████████████████████████████████████
██████████████████████████████████████████████████████
██████████████████████████████████████████████████████

████████████████████████

### D. The District Court's Decision Dismissing Citigroup's Complaint Requesting An Injunction Against The Second Arbitration

On November 25, 2013, after full briefing, the district court granted ADIA's motion to dismiss, "conclud[ing] that the preclusive effect, if any, of the parties' previous arbitration must be decided by arbitrators," and that "[t]he Complaint therefore fails to state a claim upon which relief can be granted." SA5.

The district court began its analysis by recognizing the Federal Arbitration Act's "'strong federal policy favoring arbitration as an alternative means of dispute resolution.'" SA6 (quoting *Ragone v. Atl. Video at Manhattan Ctr.*, 595 F.3d 115,

121 (2d Cir. 2010) (in turn quoting *Hartford Accident & Indem. Co. v. Swiss Reins. Am. Corp.*, 246 F.3d 219, 226 (2d Cir. 2001))).  The court further explained that, "[i]f the underlying claims and defenses fall within the scope of the arbitration clause, they are to be determined by the arbitrators."  SA5.  Here, the court observed, "Citigroup and ADIA agreed to a broad arbitration clause governing 'any dispute that arises out of or relates to the Transaction Documents … ,'" SA8 (quoting A163), and "Citigroup does not dispute that [ADIA's] claims [in the Second Arbitration] arise out of or relate to the 'Transaction Documents,'" SA8.

The district court then held that a res judicata defense comes within the broad arbitration clause here and the federal policy favoring arbitration, and thus must be decided by the arbitrators rather than the court.  The court relied principally on *Belco*, in which this Court held that "'the preclusive effect of a prior, related arbitration between the parties must be determined by the arbitrator in the current arbitration, rather than by the court.'"  SA6 (quoting *Belco*, 88 F.3d at 131). The district court also relied on *U.S. Fire*, *see* SA7 (citing *U.S. Fire*, 101 F.3d at 816-17), in which the prior proceeding invoked as res judicata was a federal judgment rather than, as in *Belco*, an arbitration award that had been confirmed in state court.

Against the backdrop of these authorities, the district court turned to the All Writs Act, which "grants federal courts the authority 'to issue all writs necessary or

appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law.'" SA8 (quoting 28 U.S.C. § 1651(a)); *see also* SA9 (All Writs Act "'empowers federal courts to fashion extraordinary remedies when the need arises'") (quoting *Penn. Bureau of Corr. v. U.S. Marshals Serv.*, 474 U.S. 34, 43 (1985)). The district court acknowledged that "[f]ootnote 20 to the Second Circuit's decision in *In re American Express* allows the possibility that, in certain circumstances, the All Writs Act could permit a court to enjoin arbitration." SA9 (citing *American Express*, 672 F.3d at 141 n.20). As examples of when it might be appropriate to enjoin an arbitration, the district court cited one case in which the arbitration threatened to interfere with ongoing "'extensive equitable relief'" granted by a federal court's judgment, SA9 (quoting *Local 1814, Int'l Longshoremen's Ass'n, AFL-CIO v. N.Y. Shipping Ass'n, Inc.*, 965 F.2d 1224, 1226 (2d Cir. 1992)), and another in which the arbitrations "paralleled federal litigation and 'severely threaten[ed]' multiple inconsistent judgments," SA9 (quoting *Allstate Ins. Co. v. Elzanaty*, 929 F. Supp. 2d 199, 216-18 (E.D.N.Y. 2013) (alteration in original)). Exercising its discretion, the district court found "no comparable considerations here" because "there is no separate, ongoing proceeding at risk of being undermined by the [Second Arbitration]." SA10. Absent such circumstances, the court concluded, the substantive arbitration rule of *Belco* and *U.S. Fire* requires that the arbitrators decide the res judicata question,

12

and an All Writs Act remedy should not be employed to "swallow the *Belco* rule." SA10.

## **SUMMARY OF ARGUMENT**

In providing that district courts "may issue all writs necessary or appropriate in aid of *their respective jurisdictions* and agreeable to *the usages and principles of law*," 28 U.S.C. § 1651(a) (emphasis added), the All Writs Act requires consultation of the scope of "their respective jurisdictions" and consideration of "the usages and principles of law." Those substantive questions must be answered at the threshold before turning to decide whether a remedy under the All Writs Act is appropriate.

The district court below thus appropriately began with the substantive question whether, in the context of a broad arbitration agreement between two parties, one party's res judicata defense (based on a prior arbitration and/or federal judgment) asserted as against the arbitration is for the arbitrators or a court to decide. Relying on this Court's decisions in *Belco* (which involved a res judicata defense predicated on a prior arbitration that had been confirmed by a state court) and *U.S. Fire* (which involved a res judicata defense predicated on a prior federal judgment), both of which held that the res judicata defense is for the arbitrators to decide, the district court reached the same conclusion here. Given that arbitrators are to decide the res judicata defense as a matter of the substantive law of

arbitration, it would make little sense for a district court to use its remedial authority under the All Writs Act to enjoin them from deciding it.

The district court, acknowledging this Court's *dicta* in *American Express*, nonetheless considered whether *other* circumstances might justify using the All Writs Act to enjoin the Second Arbitration here. The district court reviewed cases in which such a remedy had been afforded, observing that they involved situations where the arbitration threatened an *ongoing* federal case. Exercising its discretion, the district court found such circumstances absent here, because the prior arbitration (and federal judgment confirming it) is fully *concluded*.

Contrary to Citigroup's melodramatic assertion, the district court's decision does not countenance abuse of the litigation or arbitration process. Citigroup is free to advance its res judicata defense before the arbitrators, and the arbitrators will accept the defense if they find that it has merit.

## STANDARD OF REVIEW

Citigroup omits from its "Standard Of Review" section (Br. 31) that this Court reviews a district court's grant or denial of an injunction under the All Writs Act only for "abuse of discretion." *United States v. Schurkman*, 728 F.3d 129, 135 (2d Cir. 2013) (reviewing issuance of injunction under All Writs Act); *accord, e.g.*, *Evangelista v. United States*, 523 F. App'x 12, 12 (2d Cir. 2013) (summary order) (reviewing denial of writ of error *coram nobis* under All Writs Act); *Bailey v. State*

14

*Farm Fire & Cas. Co.*, 414 F.3d 1187, 1189 (10th Cir. 2005) (reviewing denial of injunction under All Writs Act). Because Citigroup's complaint sought only such an injunction, this Court should employ this standard of review in reviewing the district court's judgment dismissing Citigroup's complaint.

## ARGUMENT

### THE DISTRICT COURT ACTED WITHIN ITS DISCRETION IN DECLINING TO ENJOIN THE SECOND ARBITRATION AND THEREFORE IN DISMISSING CITIGROUP'S COMPLAINT

A district court's remedial authority under the All Writs Act does not exist in a vacuum; it is informed by the substantive law. The district court here correctly began by consulting the substantive federal law of arbitration—specifically, this Court's precedents holding that, in the context of a broad arbitration clause, the preclusive effect of a prior federal judgment on a subsequent arbitration is to be decided by the arbitrators rather than the court. Recognizing that it would make little sense to use the All Writs Act to enjoin the arbitrators from doing what the substantive law of arbitration commands, the district court nonetheless considered whether extraordinary circumstances are present here that would justify such an injunction. In finding none, the court acted within its broad discretion, and its judgment should be affirmed.

## A.    The Remedial Authority Provided By The All Writs Act Must Be Exercised Against The Backdrop Of The Substantive Law

The All Writs Act provides:  "The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law."  28 U.S.C. § 1651(a).  Especially because these "extraordinary" writs "should be issued sparingly," *United States v. George*, 676 F.3d 249, 253 (1st Cir. 2012), what is "necessary or appropriate in aid of their respective jurisdictions" or "agreeable to the usages and principles of law" requires consultation of substantive law concerning the proper scope of a district court's "jurisdiction" and the content of "the usages and principles of law."  Thus, in *Schurkman*, this Court, applying the All Writs Act and the Anti-Injunction Act's analogous phrase "necessary in aid of the federal court's jurisdiction," 728 F.3d at 136 (citing 28 U.S.C. § 2283), reaffirmed that "'in aid of jurisdiction' … generally applies only where necessary to protect a federal court's jurisdiction over a *res*," 728 F.3d at 137.  That substantive principle determined the outcome in *Schurkman* because the federal case was *in personam* rather than *in rem*; accordingly, the remedy of an All Writs Act injunction was not warranted.  *Id.* at 138.[4]

---

[4]    *Schurkman* noted, but found inapplicable, an exception for "exceptional circumstances" where the imminent settlement of ongoing, consolidated multidistrict federal class actions was threatened by state proceedings.  728 F.3d at

So too here, before proceeding to the question whether to issue the remedy of an injunction under the All Writs Act against the Second Arbitration, the district court appropriately began, SA5-8, by asking the substantive question who—the arbitrators or the court—decides a res judicata defense predicated on a prior federal judgment. (We address that question in the next Point B.) If the answer is the arbitrators, it would be inconsistent to use the remedy of the All Writs Act to block the arbitrators from performing the very task the substantive law assigns them. *See Klay v. United Healthgroup, Inc.*, 376 F.3d 1092, 1109 (11th Cir. 2004) ("[N]either the *Kelly* nor *Weaver* courts had the power to enjoin arbitration [under the All Writs Act] on *res judicata* grounds *because res judicata was for the arbitrator to decide in the first instance*.") (emphasis added). At the very least, only exceptional circumstances—which the district court found absent here, *see* Point C, *infra*— would warrant such an injunction.

**B.** **The Substantive Law Of Arbitration Assigns To The Arbitrators, Not The Federal District Court, The Task Of Deciding A Preclusion Defense Predicated On A Prior Federal Judgment**

"The Federal Arbitration Act ('FAA'), 9 U.S.C. § 1 *et seq.*, 'creates a body of federal substantive law of arbitrability applicable to arbitration agreements … affecting interstate commerce.'" *Ragone*, 595 F.3d at 121 (quoting *Alliance Bernstein Inv. Research & Mgmt., Inc. v. Schaffran*, 445 F.3d 121, 125 (2d Cir.

---

137-38. The district court here considered, but found unwarranted, a similar exercise of All Writs Act authority. *See supra*, at 12; *infra*, at 24.

2006) (ellipsis in original)).[5]  The FAA expresses "'a strong federal policy favoring arbitration as an alternative means of dispute resolution.'"  *Ragone*, 595 F.3d at 121 (quoting *Hartford Accident & Indem. Co.*, 246 F.3d at 226).  "'[I]t is difficult to overstate the strong federal policy in favor of arbitration, and it is a policy that [this Court has] often and emphatically applied.'"  *Ragone*, 595 F.3d at 121 (quoting *Arciniaga v. Gen. Motors Corp.*, 460 F.3d 231, 234 (2d Cir. 2006)).

Applying this policy, the Supreme Court and this Court have held that most disputes between parties subject to an arbitration agreement must be decided by the arbitrators rather than a court.  The narrow "exception" for matters that are "for a court to decide" applies to disputes about "whether the parties are bound by a given arbitration clause" or "whether an arbitration clause in a concededly binding contract applies to a particular type of controversy."  *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83-84 (2002); *accord, Belco*, 88 F.3d at 135 ("The 'arbitrability' of a dispute comprises the questions of (1) whether there exists a valid agreement to arbitrate at all under the contract in question … and if so,

---

[5]  The FAA, among other things, "implements" the United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards (also known as the New York Convention), which applies to agreements that are "'commercial and … not entirely between citizens of the United States.'"  *Republic of Ecuador v. Chevron Corp.*, 638 F.3d 384, 391 (2d Cir. 2011) (quoting *Motorola Credit Corp. v. Uzan*, 388 F.3d 39, 49 (2d Cir. 2004)) (ellipsis in original).  The FAA and New York Convention apply here because ADIA's agreement (which contains the arbitration clause) to invest in Citigroup is a commercial agreement, and ADIA is not a citizen of the United States.

(2) whether the particular dispute sought to be arbitrated falls within the scope of the arbitration agreement."). This narrow exception does not encompass "'allegation[s] of waiver, delay, or a like defense to arbitrability,'" *Howsam*, 537 U.S. at 84 (alteration in original) (quoting *Moses H. Cone Mem. Hosp.*, 460 U.S. at 25), which are for the arbitrators to decide, *Howsam*, 537 U.S. at 85. *See also id.* ("[T]he NASD's time limit rule falls within the class of gateway procedural disputes that do not present what our cases have called 'questions of arbitrability.'").

In *Belco*, this Court addressed whether a res judicata defense to an arbitration is for the arbitrators or the court to decide. The parties, Belco and National Union, had previously been involved in an arbitration that resulted in an award in favor of Belco, which award was subsequently confirmed by a New York state court. 88 F.3d at 131. Several years later, National Union commenced a new arbitration against Belco. *Id.* Belco brought suit in federal district court seeking a declaratory judgment that the new arbitration was barred by res judicata given the prior, concluded (and confirmed) arbitration. *Id.* at 131-32. The district court held that resolution of the res judicata defense was for the arbitrators rather than the court, and compelled the parties to participate in the new arbitration. *Id.* at 132. This Court affirmed. After finding that the parties' agreement was valid and binding, and that the parties' dispute fell within the scope of the arbitration clause,

this Court held that a res judicata or preclusion defense is "a legal defense … [that] is as much related to the merits as such affirmative defenses as a time limit in the arbitration agreement or laches, which are assigned to an arbitrator under a broad arbitration clause …." *Id.* at 135-36.

In *U.S. Fire*, this Court extended *Belco* to the situation where the prior judgment invoked as preclusive was a federal judgment rather than, as in *Belco*, an arbitration award confirmed by a state court. National Gypsum and U.S. Fire Insurance Company had been parties to a declaratory judgment entered by a federal district court in 1993. 101 F.3d at 815. Subsequently, National Gypsum commenced an arbitration proceeding, and U.S. Fire responded by filing a suit, seeking to enjoin the arbitration, before the same federal district court (and same judge) that had entered the 1993 judgment. *Id.* The district court granted the injunction. *Id.* at 815-16. This Court reversed, relying, *inter alia*, on "the FAA's strong presumption of arbitrability," *id.* at 816, and *Belco*, *see U.S. Fire*, 101 F.3d at 817. This Court recognized that *Belco* involved the "issue-preclusive effect of a prior arbitration" rather than a "prior [federal] judgment," but nonetheless found *Belco*'s reasoning to apply and to require that the dispute be resolved by the arbitrators in the new arbitration, rather than by the district court. *U.S. Fire*, 101 F.3d at 817.

Here, as an initial matter, the district court found—and indeed noted that Citigroup did not dispute—that the parties' broad arbitration clause encompasses Citigroup's res judicata defense to the Second Arbitration. SA8.[6] The clause applies to "any dispute that arises out of or relates to the Transaction Documents," A163, and thus is of comparable scope to the arbitration clauses at issue in *U.S. Fire*, 101 F.3d at 815 (clause applied to "any disputed issues within the scope of the Agreement"), and *Belco*, 88 F.3d at 132 (clause applied to "[a]ll disputes which may arise under or in connection with this policy"). And even if the clause were "ambiguous, … the FAA would require resolving any ambiguity in favor of arbitration." *Belco*, 88 F.3d at 136.

Because the arbitration clause covers Citigroup's res judicata defense, *U.S. Fire* and *Belco* apply here and require rejection of Citigroup's argument that the district court (rather than the arbitrators) should decide the res judicata defense and should enjoin the arbitrators from doing so or from otherwise proceeding with the Second Arbitration.

Citigroup attempts to distinguish *U.S. Fire* and *Belco* as not "involv[ing] arbitration awards that were confirmed by a federal court judgment—and thus did not implicate the FAA …." Br. 37 n.7. The proposed distinction is meritless. As

---

[6]     Citigroup likewise did not contest that the Investment Agreement, which contains the arbitration clause, is valid and binding.

discussed above, *U.S. Fire* involved a prior federal judgment and held that the preclusive effect of that judgment is to be resolved by the arbitrators. While that prior federal judgment followed a start-to-finish litigation in federal court, rather than merely confirming an arbitration award, there is no sound reason to suppose that the rule should differ in these two scenarios.[7] As Citigroup itself insists elsewhere in its brief, "'[a] district court judgment entered upon an arbitration award has the same force and effect as if it had been entered in an action in the court itself.'" Br. 34 (quoting *Diapulse Corp. of Am. v. Carba, Ltd.*, 626 F.2d 1108, 1111 (2d Cir. 1980)); *see also id.* at 34 & 36 n.5 (citing 9 U.S.C. § 13(c)).[8]

---

[7]   The Eleventh Circuit has held, in the specific context of a prior federal judgment that confirmed an arbitration award, that the "*res judicata* [effect of that judgment] [i]s for the arbitrator to decide in the first instance." *Klay*, 376 F.3d at 1109 (citing, *inter alia*, *Howsam*, 537 U.S. at 83-84).

[8]   Some circuits have held that the preclusive effect of a federal judgment confirming an arbitration award is for the arbitrators in a subsequent arbitration to decide, while contemplating (unlike *U.S. Fire*) that, in the case of a federal judgment that followed a start-to-finish federal litigation, the preclusive effect might be for the court to decide. *See Emp'rs Ins. Co. of Wausau v. OneBeacon Am. Ins. Co.*, 744 F.3d 25, 28-29 (1st Cir. 2014); *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1133-34 (9th Cir. 2000). But both of these courts rejected the argument that 9 U.S.C. § 13 requires equanimity to the extent that the court must decide the preclusive effect even in the former situation. The Ninth Circuit reasoned that the argument "begs the question because the statute says nothing about which forum or *who* determines the effect of the judgment," and also "obscures the fact that while a judgment entered upon a confirmed arbitration award has the same force and effect under the FAA as a court judgment for enforcement purposes, it is not wholly parallel to a court judgment for all purposes." *Chiron*, 207 F.3d at 1133; *see also Emp'rs Ins. Co. of Wausau*, 744 F.3d at 28-29 (similar); *cf. MLE Realty Assocs. v. Handler*, 192 F.3d 259, 261-62

As to Citigroup's assertion (Br. 37 n.7) that *U.S. Fire* and *Belco* "did not implicate the FAA," it is refuted by the plain text of those decisions, both of which rely upon "the FAA's strong presumption of arbitrability," *U.S. Fire*, 101 F.3d at 816; *see also Belco*, 88 F.3d at 133, a presumption that Citigroup's brief ignores entirely.

*U.S. Fire* also forecloses Citigroup's argument that it cannot have contemplated at the time the Investment Agreement (and arbitration clause) was negotiated and signed that there could be "repeat arbitrations on issues that [according to Citigroup] were or could have been adjudicated in the face of a final judgment confirming a prior arbitration award." Br. 38. In *U.S. Fire*, this Court explained that "the question of who should decide the issue-preclusive effect of a prior judgment is not so arcane because, unlike the arbitrability of arbitrability, it is not a higher-order question. Further, given a valid arbitration agreement with sweeping language and the courts' well-known tendency to find issues arbitrable, the insurers can hardly claim that their reasonable expectations are defeated." 101

---

(2d Cir. 1999) (federal court can "enforce" the preclusive effect of its judgment as to a *state-court action* only to the extent of matters that were actually decided by the judgment, not matters that could have been raised and decided). As the Ninth Circuit noted, decisions from other circuits in the situation of a federal judgment that followed a start-to-finish federal litigation are therefore distinguishable. *See Chiron*, 207 F.3d at 1134 (discussing *In re Y & A Grp. Sec. Litig.*, 38 F.3d 380, 383 (8th Cir. 1994); *Kelly v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 985 F.2d 1067, 1069 (11th Cir. 1993)). Moreover, those decisions pre-dated *Howsam* and thus may no longer be sound, as the Eleventh Circuit has already determined as to *Kelly*, *see Klay*, 376 F.3d at 1109.

F.3d at 817.  This reasoning applies *a fortiori* here, where *U.S. Fire* had been on the books for more than a decade before the Investment Agreement was negotiated and signed.

> **C.      The District Court Acted Within Its Discretion In Finding That No Exceptional Circumstances Warrant An All Writs Act Injunction**

As discussed in Point A, *supra*, the substantive rule of arbitration law strongly informs, and indeed may control, a district court's exercise of its remedial authority under the All Writs Act.  And because, as discussed in Point B, *supra*, the substantive rule of arbitration law instructs that a preclusion defense is for the arbitrators rather than the court to decide, it would make little sense for a district court to exercise its remedial discretion under the All Writs Act to enjoin the arbitrators from performing that task.

As discussed below, the district court nonetheless recognized that, as suggested by *American Express*, 672 F.3d at 141 n.20, it has discretion to use its All Writs Act authority in certain circumstances; the court did not abuse its discretion in finding those circumstances absent here.

As an initial matter, this Court should reject Citigroup's argument (Br. 45-48) that *American Express* somehow overruled or limited this Court's prior decisions in *U.S. Fire* and *Belco*.  "One panel of this Court … 'cannot overrule a prior decision of another panel.'"  *WNET, Thirteen v. Aereo, Inc.*, 712 F.3d 676,

695 (2d Cir. 2013) (quoting *Union of Needletrades, Indus. & Textile Emps., AFL–CIO, CLC v. U.S. I.N.S.,* 336 F.3d 200, 210 (2d Cir. 2003)).[9] A corollary is that, if two decisions by different panels of this Court are in conflict, the earlier one controls. *See Merrill Lynch & Co. v. Allegheny Energy, Inc.*, 500 F.3d 171, 187 (2d Cir. 2007). Thus, that *U.S. Fire* and *Belco* "predat[e] *American Express* by some 15 years" (Citigroup Br. 48 n.11) supports, rather than diminishes, their status as controlling precedent in this Court.[10]

In fact, *American Express* is entirely consistent with *U.S. Fire* and *Belco*. *American Express* involved a dispute over the extent to which an arbitration agreement's scope had been narrowed by a federal judgment; this Court deemed the dispute an "arbitrability" question that is for a court rather than the arbitrators to decide. 672 F.3d at 131-32. This Court thus had no reason to address (much

---

[9]  Although "[t]here is an exception when an intervening Supreme Court decision 'casts doubt on our controlling precedent,'" *WNET, Thirteen*, 712 F.3d at 695 (quoting *Union of Needletrades*, 336 F.3d at 210), neither the *American Express* passage, 672 F.3d at 141 n.20, nor Citigroup's brief identifies any such intervening decision.

[10]  Contrary to Citigroup's suggestion (Br. 48), there is no exception to the earlier-decision-controls rule where the earlier decision was brought to the attention of the later panel and yet not discussed by the later panel, as was the case with the earlier *Belco* decision and the later *American Express* decision. As discussed in text, *American Express* had no reason to discuss *Belco* because the central question in *American Express* was one of the scope of the arbitration clause, not an affirmative defense to a concededly arbitrable claim. In any event, even if there were an exception along the lines proposed by Citigroup, it would not apply to *U.S. Fire*, which was not brought to the *American Express* panel's attention.

25

less to disavow) cases like *Belco, U.S. Fire*, and *Howsam* that hold that resolution of an affirmative defense is for the arbitrators to decide. Indeed, this Court held that, as to the claims in *American Express* that remained within the scope of the arbitration agreement (like the claim and defense in the Second Arbitration here), the district court "lacked authority to enjoin the arbitration." 672 F.3d at 142. (This Court did hold that an injunction of the arbitration was proper, under the district court's remedial authority of its retention of jurisdiction over the federal judgment, *id.* at 141 n.20, as to the claims that were "not covered by a valid and binding arbitration agreement," *id.* at 142. There are no such claims here.)

In a footnote, this Court stated that "the All Writs Act might, in another case without the type of jurisdictional retention present here, give a district court 'the authority to enjoin arbitration to prevent re-litigation.'" *Id.* at 141 n.20 (quoting *Kelly*, 985 F.2d at 1069). Contrary to Citigroup's argument (Br. 44), the reference to "another case without the type of jurisdictional retention present here," does not suggest any intent to change the substantive rule of arbitration law set forth in *Belco* and *U.S. Fire*. Rather, it concerns only the founts of remedial authority potentially available; in *American Express*, the district court at the time of rendering its earlier judgment had expressly retained ongoing jurisdiction to enforce that judgment, such that this Court did not need to decide whether the All Writs Act *also* provided remedial authority. But as explained in Point A, *supra*,

the existence of All Writs Act remedial authority cannot circumvent the underlying question (informed by substantive law) whether the remedy is "necessary or appropriate" or "agreeable to the usages and principles of law." 28 U.S.C. § 1651(a). *Belco* and *U.S. Fire* set forth a substantive rule of arbitration that either controls, or at the very least casts serious doubt upon, whether an All Writs Act injunction is warranted in the circumstances here. Accordingly, that those decisions (or *Howsam*, or the decisions by the First and Ninth Circuits in *Employers Insurance Company of Wausau* and *Chiron*) discuss only the substantive rule and not the All Writs Act (*see* Citigroup Br. 41, 47) does not diminish their force as a basis for rejecting Citigroup's request for an All Writs Act injunction.

The *American Express* footnote did recognize that, in certain circumstances above and beyond those in *U.S. Fire* and *Belco*, a district court may have authority to issue an injunction against arbitration under the All Writs Act. The district court here acknowledged that authority and discussed two cases where courts, including this Court, have enjoined arbitration. SA9. In *Local 1814*, the federal action was still ongoing, as the federal court had before it a proposed consent judgment, and the arbitration proceeding stood to interfere with the federal court's consideration of that proposed judgment. 965 F.2d at 1229-31; *see also id.* at 1226 (an already-entered consent judgment as to another party included "extensive equitable relief,"

including "the appointment of a 'monitor' to oversee certain operations" of a union going forward). Similarly, in *Allstate Ins. Co. v. Elzanaty*, an ongoing federal litigation stood to be "severely threaten[ed]" by "pending arbitrations or future arbitrations [that] result in inconsistent rulings with regard to" the issue then pending before the federal court. 929 F. Supp. 2d at 220.[11]

The district court correctly recognized that these cases involved an arbitration that posed a threat to one or more *ongoing* federal actions, as opposed to *concluded* federal judgments. SA9. Given that only a concluded federal judgment is invoked for preclusive effect here, the district court acted within its discretion in determining not to exercise its "extraordinary" remedial authority under the All Writs Act, SA10, especially where doing so would contradict, or at the very least be in substantial tension with, the substantive rule of *U.S. Fire* and *Belco*.[12]

---

[11]   *Allstate* is unusual in that the party entitled to arbitration chose voluntarily to proceed on the merits in federal court *and* to initiate arbitration proceedings, thus giving rise to the situation where the federal action and the arbitrations were simultaneously pending. *See* 929 F. Supp. 2d at 205.

[12]   Other cases cited in the *American Express* footnote, but not discussed by the district court, do not suggest that the district court abused its discretion in denying an All Writs Act injunction here. *Klay*, as discussed *supra*, at 17 & 22 n.7, held that a district court lacks "the power to enjoin arbitration [under the All Writs Act] on *res judicata* grounds because *res judicata* [is] for the arbitrator to decide in the first instance." 376 F.3d at 1109. *Y & A Group*, 38 F.3d at 382-83, as discussed *supra*, at 23 n.8, is inconsistent with this Court's decision in *U.S. Fire*, and in any event is inapposite because it involved a federal judgment that followed a start-to-finish federal litigation, not a federal judgment that confirmed an arbitration award. *Hartley v. Stamford Towers Ltd. Partnership*, Nos. 92-16802 & 92-56528, 1994

28

**D.** **Citigroup's Remaining Policy Argument Is Incorrect And Does Not Establish That The District Court Abused Its Discretion In Declining To Enjoin The Second Arbitration**

Lacking a persuasive distinction of *U.S. Fire* and *Belco* or an explanation how the district court abused its discretion in denying an All Writs Act injunction, Citigroup closes its brief with an apparently policy-based plea that an injunction must issue here because ADIA is supposedly a "serial litigant" that, left unchecked, will "initiate an unlimited number of successive arbitrations concerning or relating to the very same issues that were raised and adjudicated …." Br. 50. Both Citigroup's premise (that the Second Arbitration concerns "the very same issues that were raised and adjudicated" in the First Arbitration) and its conclusion (that the Second Arbitration should therefore be enjoined) are erroneous.

Consider first the conclusion. As demonstrated in the previous Points, given the substantive rule of arbitration law that a res judicata defense is for the arbitrators to decide, and the lack of any extreme circumstances that might warrant enjoining the arbitration, the district court acted within its discretion in denying

_____

WL 463497, at *3-4 (9th Cir. Aug. 26, 1994), like *American Express* but unlike here, involved an injunction against arbitration of claims that, in the wake of a prior federal judgment, were no longer within the scope of the arbitration clause. *United States v. Eberhard*, No. 03 CR 562, 2004 WL 616122, at *1, *3 n.6 (S.D.N.Y. Mar. 30, 2004), like the two cases the district court discussed, SA9, involved an arbitration's potential threat to an *ongoing* federal judicial proceeding rather than a concluded federal judgment.

Citigroup's requested injunction. This does not leave Citigroup without a remedy: Citigroup is free to assert its res judicata defense to the arbitrators, who may (or may not) agree with Citigroup. Citigroup's suggestion (Br. 3-4, 50) that ADIA acted frivolously in filing the Second Arbitration, even if true, does not change matters because "'[w]hether 'arguable' or not, *indeed even if it appears to the court to be frivolous*, [a party's] claim [or defense] … is to be decided, not by the court asked to order arbitration, but as the parties have agreed, by the arbitrator." *Local 1814*, 965 F.2d at 1233 (emphasis added) (quoting *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649-50 (1986)); *see also, e.g.*, *Gay v. CreditInform*, 511 F.3d 369, 386-87 (3d Cir. 2007) (so holding outside the labor context).[13]

Citigroup's premise is similarly incorrect; it is hardly a foregone conclusion that ADIA's claim in the Second Arbitration is barred by res judicata. "'[T]he doctrine of res judicata provides that when a final judgment has been entered on the merits of a case, [i]t is a finality *as to the claim or demand in controversy*, concluding parties and those in privity with them, not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered *for that purpose*.'"

---

[13]    Moreover, if the arbitrators find ADIA's conduct in filing the Second Arbitration frivolous, they may award costs to Citigroup under ICDR Article 31.

*Proctor*, 715 F.3d at 411-12 (quoting *SEC v. First Jersey Sec., Inc.*, 101 F.3d 1450, 1463 (2d Cir. 1996) (in turn quoting *Nevada v. United States*, 463 U.S. 110, 129-30 (1983))) (alterations and emphasis by *Proctor*). Importantly, in determining what claims "might have been" raised in the earlier case, "[t]he fact that several operative facts may be common to successive actions between the same parties does not mean that a judgment in the first will always preclude litigation of the second." *Proctor*, 715 F.3d at 412. In particular, "'[i]f the second litigation involve[s] *different* transactions, and *especially subsequent* transactions, there generally is no claim preclusion.'" *Id.* (quoting *First Jersey*, 101 F.3d at 1464) (second alteration and emphases by *Proctor*).

Here, ADIA has strong arguments that its claim in the Second Arbitration is not barred by the res judicata effect of the First Arbitration (and the judgment confirming the award in that arbitration). As an initial matter, the First Arbitration did not actually decide the claim in the Second Arbitration. The First Arbitration mainly concerned Citigroup's alleged misconduct leading up to execution of the Investment Agreement, *see* A299-300; while one of ADIA's claims, for breach of the implied covenant of good faith and fair dealing, encompasses alleged conduct by Citigroup *during* the term of the Investment Agreement, *see* A300 (claim number 5), that claim focuses on two discrete actions by Citigroup, one in February 2009 and a second in May 2009, *see* A298; A261-65 (First Arbitration

31

tribunal's statement of reasons for granting Citigroup summary judgment on this claim). The Second Arbitration, by contrast, focuses on different post-investment conduct by Citigroup, such as failure in 2012 to pass "stress tests" imposed by the Federal Reserve.[14] And this discrete post-investment conduct likely qualifies as "'*different* transactions,'" *Proctor*, 715 F.3d at 412 (quoting *First Jersey*, 101 F.3d at 1464) (emphasis by *Proctor*), such that ADIA was under no obligation to raise it during the First Arbitration. Citigroup may disagree, but again its remedy is to present its arguments to the arbitrators in the Second Arbitration for consideration and resolution, as required by its arbitration agreement with ADIA.

---

[14]  Citigroup's assertion (Br. 4) that ADIA's arbitration demand in the Second Arbitration is "startlingly vague and conclusory" does not support a finding of res judicata. In the text, we provide further details that show that res judicata is hardly a foregone conclusion. To the extent Citigroup believes ADIA's arbitration demand is too vague, and to the extent the details provided here do not satisfy Citigroup, Citigroup is free to ask the arbitrators in the Second Arbitration to require ADIA to provide a more definite statement.

## **CONCLUSION**

The district court's judgment should be affirmed.

Dated: June 26, 2014
New York, New York

Respectfully submitted,

/s/Sanford I. Weisburst
Peter E. Calamari
Sanford I. Weisburst
Tai-Heng Cheng
QUINN EMANUEL URQUHART
& SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010
(212) 849-7000

*Counsel for Defendant-Appellee*
*Abu Dhabi Investment Authority*

33

## <u>CERTIFICATE OF COMPLIANCE WITH FRAP 32(a)</u>

1.    This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 8,035 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.    This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in Times New Roman, 14 point font.