13-4825-cv
*Citigroup, Inc. v. Abu Dhabi Investment Authority*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

August Term, 2014

(Submitted: December 9, 2014      Decided: January 14, 2015)

Docket No. 13-4825-cv

---

CITIGROUP, INC.,

*Plaintiff-Appellant,*

- v. -

ABU DHABI INVESTMENT AUTHORITY,

*Defendant-Appellee.*

---

Before:

WESLEY, HALL, and LYNCH, *Circuit Judges.*

Appeal from the district court's judgment dismissing the complaint of Citigroup, Inc. and compelling arbitration pursuant to an arbitration clause contained in the parties' contract. We hold that the "extraordinary remedies" authorized by the All Writs Act, 28 U.S.C. § 1651, do not permit a district court to enjoin an arbitration based on whatever claim-preclusive effect may result from the court's prior judgment when that judgment merely confirmed the result of the parties' earlier arbitration without considering the merits of the underlying claims at issue in that arbitration.

AFFIRMED.

> LESLIE GORDON FAGEN (Brad S. Karp and Gregory F. Laufer, *on the brief*), Paul, Weiss, Rifkind, Wharton & Garrison LLP, New York, NY, *for Plaintiff-Appellant Citigroup, Inc.*
>
> SANFORD I. WEISBURST (Peter E. Calamari and Tai-Heng Cheng, *on the brief*), Quinn Emanuel Urquhart & Sullivan, LLP, New York, NY, *for Defendant-Appellee Abu Dhabi Investment Authority.*

HALL, *Circuit Judge*:

This case presents the question of whether the All Writs Act, 28 U.S.C. § 1651(a), permits a federal district court to enjoin a second arbitration between parties to a contractual arbitration agreement based on what one party asserts is the claim-preclusive effect of a prior federal judgment confirming the result of the parties' earlier arbitration. We hold that the "extraordinary remedies" authorized by the All Writs Act cannot be used to enjoin an arbitration based on whatever claim-preclusive effect may result from the district court's prior judgment when that judgment merely confirmed the result of the parties' earlier arbitration without considering the merits of the underlying claims at issue in that arbitration. We concur with the district court that Appellant Citigroup, Inc. has not demonstrated an adequate basis for an extraordinary injunction pursuant to the All Writs Act and affirm the judgment dismissing Citigroup's complaint and compelling arbitration.

## BACKGROUND

The facts are straightforward. Citigroup, Inc. and the Abu Dhabi Investment Authority ("ADIA") were parties to an Investment Agreement under which ADIA invested billions of dollars in Citigroup. The Agreement contained an arbitration clause providing that "any dispute that arises out of or relates to the [Agreement], or the breach thereof, . . . will be decided through arbitration administered by the American Arbitration Association." J.A. 163. In 2009, ADIA commenced arbitration proceedings pursuant to this clause, alleging that Citigroup had diluted the value of its investment by issuing preferred shares to other investors. *See Abu Dhabi Inv. Auth. v. Citigroup, Inc.*, No. 12-cv-283, 2013 WL 789642, at *1 (S.D.N.Y. Mar. 4, 2013). It asserted claims of fraud, securities fraud, negligent

2

misrepresentation, breach of fiduciary duty, breach of contract, and breach of the implied covenant of good faith and fair dealing. *Id.* The arbitrators rejected ADIA's claims and returned an award in favor of Citigroup after a lengthy and hard-fought proceeding that included extensive discovery and a multi-day hearing. *Id.* Citigroup moved in the United States District Court for the Southern District of New York for entry of an order confirming the award. The district court (Daniels, *J.*) granted Citigroup's motion, rejecting ADIA's arguments that the award should be vacated on the grounds that the arbitrators' choice-of-law ruling and two evidentiary rulings were made in manifest disregard of the law and prevented ADIA from presenting its case. *See id.* at *1, 9. ADIA appealed, and this Court affirmed, holding that the arbitrators did not act in manifest disregard of the law or exceed their authority. *Abu Dhabi Inv. Auth. v. Citigroup, Inc.*, 557 F. App'x 66, 67–68 (2d Cir. Feb. 19, 2014).

In August 2013, while the district court's confirmation judgment remained pending before this Court on appeal, ADIA served Citigroup with a new notice of arbitration pursuant to the Investment Agreement, again asserting claims of breach of contract and breach of the implied covenant of good faith and fair dealing. Shortly thereafter, Citigroup instituted this action pursuant to the Declaratory Judgment Act, the All Writs Act, the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, *et seq.*, and the district court's "inherent authority to protect its proceedings and judgments." By way of relief, Citigroup sought to enjoin the second arbitration on the ground that ADIA's new claims were barred by the doctrine of claim preclusion, or *res judicata*, because they were or could have been raised in

the first arbitration.[1]  Citigroup maintained that the second arbitration constituted an "assault" on the district court's March 2013 judgment confirming the first award, and that applying the All Writs Act to enjoin the second arbitration was necessary to protect the integrity of that judgment.  ADIA moved to dismiss Citigroup's complaint and to compel arbitration.

The district court (Castel, *J.*) granted ADIA's motions.  After first flagging the strong federal policy favoring arbitration, the district court then pointed to our decision in *National Union Fire Insurance Co. of Pittsburgh, PA v. Belco Petroleum Corp.* ("*Belco*"), 88 F.3d 129 (2d Cir. 1996), in which we held that the preclusive effect of a prior arbitration that had been confirmed by a state court was to be decided by the arbitrators, not the court.  Given our holding in *Belco*, other similar decisions, and the parties' "broad arbitration clause" governing "any dispute that arises out of the" Investment Agreement, the district court held that Citigroup's preclusion defense was properly resolved in arbitration.  *See Citigroup, Inc. v. Abu Dhabi Inv. Auth.*, No. 13-cv-6073, 2013 WL 6171315, at *3–5 (S.D.N.Y. Nov. 25, 2013).

Regarding Citigroup's request to enjoin the second arbitration pursuant to the All Writs Act, the district court first observed that our decision in *In re American Express Financial Advisors Securities Litigation*, 672 F.3d 113 (2d Cir. 2011), "allow[ed] the possibility that, in certain circumstances, the All Writs Act could permit a court to enjoin an arbitration." *Citigroup, Inc.*, 2013 WL 6171315, at *5.  The court noted, however, that we had previously

---

[1] The doctrine of claim preclusion, or *res judicata*, bars the subsequent litigation of any claims that were or could have been raised in a prior action.  *See Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 398 (1981).

4

sanctioned the use of the Act to enjoin arbitration only when the arbitration threatened to undermine a longstanding federal consent judgment that encompassed extensive equitable relief. *See Local 1814 Int'l Longshoremen's Ass'n, AFL-CIO v. N.Y. Shipping Ass'n, Inc.*, 965 F.2d 1224, 1237–38 (2d Cir. 1992). Citigroup's case, by contrast, presented only "garden-variety res judicata concerns" because there was "no separate, ongoing proceeding at risk of being undermined" by the second arbitration. *Citigroup, Inc.*, 2013 WL 6171315, at *5. Accepting the argument that application of the All Writs Act was necessary in the circumstances of Citigroup's case, the district court reasoned, would "swallow the *Belco* rule" because it "would apply to virtually any instance where a second arbitration is purportedly precluded by a federal court judgment confirming the first arbitration award." *Id.* Accordingly, the court held that there was "no basis for an extraordinary remedy to issue under the All Writs Act." *Id.* at *6.

Citigroup timely appealed the resulting judgment.

## DISCUSSION

Here, it is undisputed that two sophisticated parties voluntarily contracted to arbitrate "any dispute" arising from or relating to their Investment Agreement. As provided for under the FAA, the district court's March 2013 judgment merely confirmed the result of the parties' earlier arbitration through a limited procedure that did not require consideration of the merits of the underlying claims. The sole issue in this appeal is whether the district court erred when it refused to enjoin the second arbitration pursuant to the All Writs Act

based on what Citigroup asserts is the claim-preclusive effect of the March 2013 judgment and instead compelled the parties to arbitrate ADIA's second set of claims.[2]

The resolution of this issue implicates competing considerations. On the one hand, the FAA expresses "a national policy favoring arbitration when the parties contract for that mode of dispute resolution." *Preston v. Ferrer*, 552 U.S. 346, 349 (2008). The FAA's framework, moreover, authorizes the federal courts to conduct only a limited review of discrete issues before compelling arbitration, leaving the resolution of all other disputes to the arbitrators. *See Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83–84 (2002). Set against these considerations, on the other hand, is the weighty practical concern for the integrity of federal judgments that could arise if parties felt free to relitigate in arbitration proceedings claims previously resolved by a federal court. *See In re Am. Express Fin. Advisors Sec. Litig.* ("*American Express*"), 672 F.3d 113, 140 (2d Cir. 2011). In recognition of this concern, several of our sister circuits have held that the All Writs Act, which empowers the federal courts to "issue all writs necessary or appropriate in aid of their respective jurisdictions," 28 U.S.C. § 1651(a), permits district courts to enjoin arbitrations that threaten to undermine federal judgments. *See, e.g., In re Y & A Grp. Sec. Litig.*, 38 F.3d 380, 382–83 (8th Cir. 1994). Borrowing language from the Third Circuit, we have characterized these competing considerations as presenting "'a high order challenge.'" *American Express*, 672 F.3d at 140, 141 n.20 (quoting *John Hancock Mut. Life Ins. Co. v. Olick*, 151 F.3d 132, 138 (3d

---

[2] We review *de novo* the district court's decision to compel arbitration. *See Cap Gemini Ernst & Young, U.S., LLC v. Nackel*, 346 F.3d 360, 364 (2d Cir. 2003).

Cir. 1998)).  We now must decide the proper balance that should be struck between them in this case.

In addition to manifesting a policy strongly favoring arbitration when contracted for by parties to a dispute, the FAA establishes a "body of federal substantive law of arbitrability[] applicable to any arbitration agreement within coverage of the Act," *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983), and also "supplies . . . a procedural framework applicable in federal courts," *Preston*, 552 U.S. at 349.  Under this framework, most disputes between parties to a binding arbitration agreement are "arbitrable," meaning that they are to be decided by the arbitrators, not the courts.  *See Howsam*, 537 U.S. at 83–84.  There is one exception to this general rule: unless the parties "unmistakably" provide otherwise, courts are to decide "question[s] of arbitrability."  *Id.* at 83.  Such questions include disputes "about whether the parties are bound by a given arbitration clause" or "disagreement[s] about whether an arbitration clause in a concededly binding contract applies to a particular type of controversy."  *Id.* at 84.  All other "questions which grow out of the dispute and bear on its final disposition are presumptively *not* for the judge, but for an arbitrator, to decide."  *Id.* at 84–85 (internal quotation marks omitted) (identifying time limits, notice, laches, and estoppel as examples of arbitrable questions).  "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability."  *Moses H. Cone Mem. Hosp.*, 460 U.S. at 24–25.

The All Writs Act is a "residual source of authority to issue writs that are not otherwise covered by statute." *Penn. Bureau of Corr. v. U.S. Marshals Serv.*, 474 U.S. 34, 43 (1985). Thus, while the Act authorizes a federal court to issue commands that are "necessary or appropriate to effectuate or prevent the frustration of orders it has previously issued in its exercise of jurisdiction otherwise obtained," *Sheet Metal Contractors Ass'n of N. N.J. v. Sheet Metal Workers' Int'l Ass'n*, 157 F.3d 78, 82 (2d Cir. 1998) (internal quotation marks omitted), the remedies permitted under the Act are "extraordinary" and "should not be used simply to avoid the inconvenience of following statutory procedures that govern the particular circumstances," *United States v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen and Helpers of Am., AFL-CIO*, 907 F.2d 277, 280 (2d Cir. 1990); *see also Chappell & Co. v. Frankel*, 367 F.2d 197, 199–200 (2d Cir. 1966) (observing that the "prerogative writs [codified in § 1651(a)] have been reserved for extraordinary circumstances"). We review *de novo* a district court's interpretation of the All Writs Act, *United States v. Schurkman*, 728 F.3d 129, 135 (2d Cir. 2013), but will overturn its decision to grant or deny an injunction under the Act only upon identifying an abuse of discretion, *see id.*

In *American Express*, we considered an injunction that barred investors from arbitrating claims against a financial services company that the investors had previously released in a federal class action settlement over which the district court retained jurisdiction. 672 F.3d at 118–19. Explaining that the FAA did not "explicitly confer on the judiciary the authority to . . . enjoin a private arbitration," we nonetheless concluded that the injunction was proper in that case because the company, by entering into the settlement agreement, had effectively withdrawn its consent to arbitrate the released claims and the district court had

8

retained "exclusive" jurisdiction to implement the terms of that settlement agreement. *See id.* at 140–41 & n.20. In so holding, we "pause[d] to note" that some of our sister circuits had authorized the use of the All Writs Act to enjoin arbitrations in similar circumstances to prevent the relitigation of federal judgments. *Id.* at 141 n.20 (citing cases). We found it unnecessary to consider whether we agreed with that practice given our conclusion that the district court's authority to enter the injunction flowed from its retention of jurisdiction over the settlement agreement. *Id.* We thus left unanswered the question of "whether the dictates of the All Writs Act might, in another case without the type of jurisdictional retention present [in *American Express*], give a district court the authority to enjoin arbitration to prevent re-litigation." *Id.* (internal quotation marks omitted).

In this case the district court did not retain jurisdiction over the March 2013 judgment, much less in a manner comparable to the court's retention of jurisdiction over the settlement agreement in *American Express*. Citigroup contends that because *American Express* left unresolved whether the All Writs Act permits courts to enjoin an arbitration in the absence of such "jurisdictional retention," Judge Castel erred when he concluded, in Citigroup's words, that the court "lacked the power to prevent ADIA from frustrating the [c]ourt's final judgment" by bringing new claims that were or could have been raised in the parties' first arbitration. Citigroup Br. 27. We disagree with that assertion. The FAA's policy favoring arbitration and our precedents interpreting that policy indicate that it is the arbitrators, not the federal courts, who ordinarily should determine the claim-preclusive effect of a federal judgment that confirms an arbitration award. Citigroup, moreover, has

failed to demonstrate that the circumstances of this case justify use of the federal courts'
authority codified in the All Writs Act to obtain a different result.

We reason from our prior decisions interpreting the FAA that the determination of
the claim-preclusive effect of a prior federal judgment confirming an arbitration award is to
be left to the arbitrators.  In *Belco*, we held that the claim-preclusive effect of a prior
arbitration award confirmed by a state court judgment was an issue for the arbitrators to
decide rather than the federal court.  88 F.3d at 135–36.  In so holding, we reasoned that
claim preclusion was not a question of arbitrability because it, like other affirmative defenses
such as time limits and laches, was a legal defense to the opposing party's claims and, as
such, was "itself a component of the dispute on the merits."  *Id.*  Several months later, we
held in *United States Fire Ins. Co. v. National Gypsum Co.* ("*National Gypsum*") that the
arbitrators, not the court, were also to decide whether the doctrine of issue preclusion, or
collateral estoppel, barred a party from arbitrating certain issues that had previously been
resolved in litigation resulting in a federal judgment.  101 F.3d 813, 816–17 (2d Cir. 1996).
Noting that *Belco* involved the preclusive effect of a prior arbitration, we concluded in
*National Gypsum* that its reasoning was nonetheless equally applicable to the "issue-preclusive
effect of a prior judgment" because issue preclusion is also an affirmative defense that is
"part of the dispute on the merits."  *Id.* at 817.

Given our holdings in *Belco* and *National Gypsum* that arbitrators are to resolve the
claim-preclusive effect of an arbitration award confirmed by a state court and the issue-
preclusive effect of a federal judgment, it is a simple intuitive step to conclude that
arbitrators should also decide the claim-preclusive effect of a federal judgment confirming an

arbitral award. This is especially so because Citigroup has not challenged the validity of the arbitration clause at issue in this case and that clause, like the one in *Belco*, is sufficiently broad to cover any dispute over whether ADIA's current claims were or could have been raised during the first arbitration. *Compare Belco*, 88 F.3d at 136 (dispute concerning applicability of claim preclusion sent to arbitrators when the arbitration clause covered "all disputes which may arise under or in connection with" the underlying contract), *with* J.A. at 163 (arbitration clause covering "any dispute that arises out of or relates to the [Investment Agreement], or the breach thereof"). And even if we harbored some doubt as to whether the claim preclusion dispute in this case is arbitrable, we would resolve that doubt in favor of arbitration. *See Moses H. Cone Mem. Hosp.*, 460 U.S. at 24–25.

Citigroup argues that this case warrants a different result because it, unlike *Belco*, involves the claim-preclusive effect of a prior *federal* judgment. In support, Citigroup points to the various decisions we cited in *American Express* in which other courts have sanctioned the use of the All Writs Act to enjoin arbitrations that threaten federal judgments. *See In re Y&A Grp.*, 38 F.3d at 382–83 (holding that the district court had authority under the All Writs Act to enjoin arbitration to protect its earlier consent judgment where the arbitral panel had declined to afford that judgment preclusive effect); *Hartley v. Stamford Towers Ltd. P'ship*, 1994 WL 463497, at *3–5 (9th Cir. Aug. 26, 1994) (unpublished) (court had authority pursuant to the Act to enjoin arbitration when its final judgment approving a class action settlement reserved jurisdiction to enforce the settlement and enjoined class members from bringing subsequent claims grounded in the same factual basis); *Allstate Ins. Co. v. Elzanaty*, 929 F. Supp. 2d 199, 219–20 (E.D.N.Y. 2013) (temporarily enjoining arbitration pursuant to

11

the Act to protect ongoing litigation in federal court after determining that it "would severely threaten any judgment of th[e] [c]ourt to have pending arbitrations or future arbitrations result in inconsistent rulings"); *see also John Hancock Mut. Life Ins. Co. v. Olick*, 151 F.3d 132, 137–39 (3d Cir. 1998) (holding that the district court, rather than the arbitrators, should have decided the preclusive effect of the district court's earlier judgment on the merits). There is, however one significant difference between the precedent established in the cases to which Citigroup cites and the circumstances here. The relevant judgments given preclusive effect via the All Writs Act in those cases followed from federal judicial proceedings addressing the merits of the underlying claims. Thus, in the cases on which Citigroup relies, the main justification given for resorting to the All Writs Act is that the district court that resolved the merits of a case is in the best position to protect its judgment because it is the most familiar with what it considered and decided in the proceedings leading to that judgment. *See, e.g.*, *In re Y&A Grp. Sec. Litig.*, 38 F.3d at 382–83 ("The district court, and not the arbitration panel, is the best interpreter of its own judgment.").[3]

We need not, and do not, consider whether we agree with this justification because it is simply absent from this case. Citigroup seeks to preclude a second arbitration based on the district court's March 2013 confirmation judgment because it fears that the second

---

[3] The limited scope of *Y&A Group* is underscored by the concurring opinion of the late Judge Richard Arnold, who specifically noted that the final order of the district court approving the settlement agreement in that case had specifically enjoined class members from brining further claims, a fact he regarded as "dispositive." Judge Arnold went on to note that "[i]n general, when parties agree to submit a matter to arbitration, they contract for the arbitrator's decision on legal questions . . . include[ing] defenses, such as res judicata," and that he did *not* read the opinion "to hold general that courts may, by injunction, control the decision of arbitrators on questions of issue or claim preclusion." 38 F.3d at 384.

arbitration will give ADIA an opportunity to relitigate the same underlying substantive

claims that were or could have been raised in the parties' first arbitration. The district

court's March 2013 judgment, however, simply confirmed the arbitration award, which

ordinarily is "a summary proceeding that merely makes what is already a final arbitration

award a judgment of the court." *D.H. Blair & Co., Inc. v. Gottdiener*, 462 F.3d 95, 110 (2d Cir.

2006) (internal quotation marks omitted); *see also* 9 U.S.C. §§ 10, 11 (setting forth the limited

statutory grounds under which a district court may vacate or modify an arbitration award);

*Willemijn Houdstermaatschappij, BV v. Standard Microsystems Corp.*, 103 F.3d 9, 12 (2d Cir. 1997)

("[T]he court's function in confirming or vacating an arbitration award is severely limited."

(internal quotation marks omitted)).[4]  Indeed, in confirming the award, the district court did

not review the merits of any of ADIA's substantive claims or the context in which those

claims arose. Instead, it considered only whether the arbitration panel's evidentiary rulings

and application of New York choice-of-law principles violated the FAA. *See generally Abu

Dhabi Inv. Auth. v. Citigroup, Inc.*, No. 12-cv-283, 2013 WL 789642 (S.D.N.Y. Mar. 4, 2013).

Under these circumstances, a district court unfamiliar with the underlying circumstances,

transactions, and claims, is not the best interpreter of what was decided in the arbitration

---

[4] Citigroup itself observed in its memorandum of law in support of its motion to confirm the award that "[a]rbitration awards are subject to severely limited judicial review" and that, under the FAA, "a court must confirm an arbitration award unless it concludes that one of the enumerated grounds for refusing to enforce the award is present." *See Abu Dhabi Inv. Auth. v. Citigroup Inc.*, S.D.N.Y. dkt no. 12-cv-283, doc. 28 at 11 (internal quotation marks omitted).

proceedings, the result of which it merely confirmed.[5] *Accord Emp'rs Ins. Co. of Wausau v. OneBeacon Am. Ins. Co.*, 744 F.3d 25, 28–29 (1st Cir. 2014) (reasoning that because a federal judgment confirming an arbitration award "does not address the steps leading to the decision on the merits," there is "no reason why that [judgment] should give the federal court the exclusive power to determine the preclusive effect of the arbitration"); *Chiron Corp v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1133–34 (9th Cir. 2000) (reasoning that the policy underlying vesting district courts with authority to determine the claim-preclusive effect of their own judgments "is not served . . . when the district court merely confirmed the decision issued by another entity, the arbitrator, and was not uniquely qualified to ascertain [the] scope and preclusive effect" of that decision). Thus, even assuming, as we stated in *American Express*, that there "might" be circumstances under which the All Writs Act authorizes district courts to enjoin arbitration to prevent relitigation of their prior judgments, this case does not present them.[6]

---

[5] We note also that the district judge who denied Citigroup's request to enjoin the second arbitration pursuant to the All Writs Act was not the judge who originally confirmed the result of the first arbitration. *Compare Citigroup, Inc. v. Abu Dhabi Inv. Auth.*, No. 13-cv-6073, 2013 WL 6171315, at *3–5 (S.D.N.Y. Nov. 25, 2013) (Castel, *J.*), *with Abu Dhabi Inv. Auth.*, 2013 WL 789642, at *1 (Daniels, *J.*).

[6] Citigroup's claim preclusion argument is premised only on the resolution of ADIA's underlying substantive claims raised in the first arbitration. Citigroup does not argue, in other words, that we should give preclusive effect to the district court's determination in its March 2013 decision that the first arbitration panel's evidentiary rulings and choice-of-law decision did not violate the FAA. We express no opinion as to whether the All Writs Act would authorize the district court to enjoin an arbitration that threatens to undermine the district court's resolution of one of those issues.

One additional consideration supports our conclusion. Were we to agree with Citigroup that the preclusive effect of federal confirmation judgments should be decided by the courts, we would effectively create in this circuit a hierarchy of judgments confirming arbitration awards: the claim-preclusive effect of confirmation judgments issued by state courts would, pursuant to *Belco*, always be decided by the arbitrators, while the claim-preclusive effect of federal confirmation judgments may be decided by the federal courts pursuant to their authority under the All Writs Act. This seems an anomalous result, especially because we are required to afford state-court judgments full faith and credit, *see* 28 U.S.C. § 1738, and are obliged to accord recognition to the preclusive effect of state court judgments, *see Allen v. McCurry*, 449 U.S. 90, 95–96 (1980). Citigroup has not explained why it is an appropriate use of the All Writs Act's "extraordinary remedies" to treat state and federal confirmation judgments differently. The better rule, we think, is to treat them the same and, in line with *Belco* and *National Gypsum*, permit the arbitrators to determine the preclusive effect of both.

In a final sally, Citigroup argues that if we do not permit the use of the All Writs Act to protect federal judgments confirming arbitration awards, we effectively would be relegating those judgments to "second-class status" as compared to federal judgments following from proceedings on the merits. This outcome, it posits, would be violative of the FAA, which provides that an order confirming an arbitral award "shall have the same force and effect, in all respects, as, and be subject to all the provisions of law relating to, a judgment in an action." 9 U.S.C. § 13. But Citigroup's argument presents a false choice. The question before us is not whether federal judgments confirming arbitration awards

15

should be given less preclusive "force and effect" than other federal judgments.[7]  The relevant question is instead when, if ever, a federal court's interest in protecting the integrity of prior federal judgments authorizes it to use the All Writs Act to reserve for itself the exclusive prerogative to determine the claim-preclusive effect of those judgments.  In answer, we hold only that when the prior federal judgment merely confirmed an arbitration award through a limited procedure that did not involve consideration of the merits of the underlying claims, the FAA's framework favoring the submission of disputes to arbitration and our precedents in cases addressing comparable issues preclude a district court from using the All Writs Act to enjoin a subsequent arbitration of claims that one party asserts are barred by the prior arbitration.

## CONCLUSION

For the foregoing reasons, we affirm the judgment of the district court.

---

[7] Indeed, Citigroup has made no effort to demonstrate that an arbitration panel would not give claim-preclusive effect to the district court's March 2013 confirmation judgment if appropriate.

16